# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT JACKSON

### JUNE SESSION, 1998

FILED

July 9, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | **C.C.A. NO. 02C01-9710-CR-00381** |
| | ) | |
| Appellee, | ) | |
| | ) | |
| | ) | **SHELBY COUNTY** |
| **VS.** | ) | |
| | ) | **HON. JOHN P. COLTON, JR.** |
| **MICHAEL J. ADKINS,** | ) | **JUDGE** |
| | ) | |
| Appellant. | ) | (Sentencing) |

## ON APPEAL FROM THE JUDGMENT OF THE
## CRIMINAL COURT OF SHELBY COUNTY

FOR THE APPELLANT:

MICHAEL J. GATLIN
P.O. Box 27331
Memphis, TN 38167-0331

FOR THE APPELLEE:

JOHN KNOX WALKUP
Attorney General and Reporter

JANIS L. TURNER
Assistant Attorney General
425 5th Avenue North
Nashville, TN 37243

JOHN W. PIEROTTI
District Attorney General

JAMES M. LAMMEY
Assistant District Attorney General
Criminal Justice Complex, Ste. 301
201 Poplar Street
Memphis, TN 38103

OPINION FILED _____

AFFIRMED

DAVID H. WELLES, JUDGE

# OPINION

The Defendant, Michael J. Adkins, appeals as of right pursuant to Rule 3 of the Tennessee Rules of Appellate Procedure. He entered a plea of guilty to the offense of voluntary manslaughter. The agreed sentence for this Class C felony was three years, the minimum in the range for a standard offender. The manner of service of the sentence was left to the discretion of the trial judge. The judge ordered that six months of the sentence be served in the local workhouse, followed by six months of intensive probation, with the balance of the sentence to be served on regular probation. The Defendant appeals from the trial judge's denial of full probation. We affirm the judgment of the trial court.

On the night the victim was killed, the Defendant had been drinking beer and smoking marijuana. He was in the company of several other individuals. One of the other individuals had purchased what was supposedly LSD from the victim. The LSD turned out to be either counterfeit or "bad" and the Defendant and three other individuals went to the victim's residence to get a refund of the purchase price. While there, one of the other individuals "pistol-whipped" the victim and then shot him in the head and killed him. The pistol used in the killing had originally belonged to the Defendant, but he testified that he was in the process of selling it to the individual who did the shooting.

All four individuals were indicted on a charge of second degree murder. The Defendant who was the "trigger man" pleaded guilty to second degree murder and received a fifteen year sentence. The Defendant and his other two

codefendants pleaded guilty to voluntary manslaughter. The recommended sentence for the two codefendants who pleaded guilty to voluntary manslaughter was six years. The recommended sentence for the defendant was three years. The trial judge conducted a sentencing hearing during which the State recommended that the Defendant's sentence be served on probation. The trial judge declined to follow the State's recommendation in full and instead ordered that the Defendant serve six months of his sentence in the local workhouse. It is from the order of the trial court denying full probation that the Defendant appeals.

When an accused challenges the length, range, or the manner of service of a sentence, this court has a duty to conduct a de novo review of the sentence with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d) (1997). This presumption is ?conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

In conducting a de novo review of a sentence, this court must consider: (a) the evidence, if any, received at the trial and the sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) any statutory mitigating or enhancement factors; (f) any statement that the defendant made on his own behalf; and (g) the potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, -103, -210; see State v. Smith, 735 S.W.2d 859, 863 (Tenn. Crim. App. 1987).

If our review reflects that the trial court followed the statutory sentencing procedure, that the trial court imposed a lawful sentence after having given due consideration and proper weight to the factors and principles set out under the sentencing law, and that the trial court's findings of fact are adequately supported by the record, then we may not modify the sentence even if we would have preferred a different result. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

A defendant who "is an especially mitigated or standard offender convicted of a Class C, D or E felony is presumed to be a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." Tenn. Code Ann. § 40-35-102(6). Our sentencing law also provides that "convicted felons committing the most severe offenses, possessing criminal histories evincing a clear disregard for the laws and morals of society, and evincing failure of past efforts at rehabilitation shall be given first priority regarding sentencing involving incarceration." Id. § 40-35-102(5). Thus, a defendant sentenced to eight years or less who is not an offender for whom incarceration is a priority is presumed eligible for alternative sentencing unless sufficient evidence rebuts the presumption. However, the act does not provide that all offenders who meet the criteria are entitled to such relief; rather, it requires that sentencing issues be determined by the facts and circumstances presented in each case. See State v. Taylor, 744 S.W.2d 919, 922 (Tenn. Crim. App. 1987).

Additionally, the principles of sentencing reflect that the sentence should be no greater than that deserved for the offense committed and should be the least severe measure necessary to achieve the purposes for which the sentence is imposed. Tenn. Code Ann. § 40-35-103(3)-(4). The court should also consider

the potential for rehabilitation or treatment of the defendant in determining the sentence alternative. Id. § 40-35-103(5).

Because the Defendant was a standard offender convicted of a Class C felony, he was presumed to be a favorable candidate for an alternative sentencing option. The trial judge gave the Defendant the benefit of this presumption, sentencing him to split confinement. See id. § 40-35-104(c)(5). The Defendant seeks the more favorable alternative of total probation. See id. § 40-35-104(c)(3). As we have stated, the Defendant has the burden of establishing suitability for full probation, even though he is entitled to the statutory presumption of alternative sentencing. See State v. Bingham, 910 S.W.2d 448, 455 (Tenn. Crim. App. 1995). There is no "bright line rule" for determining when a defendant is entitled to full probation. Id. at 456. A trial judge is vested with a great deal of discretion on the issue of probation. Factors to be considered are whether probation will serve the ends of justice and the best interest of both the public and the Defendant, the nature and circumstances of the crime, the Defendant's potential for rehabilitation, whether full probation would unduly depreciate the seriousness of the offense, and whether full probation would serve the need to provide an effective deterrent. See id., at 456.

The presentence report reflects that the Defendant was almost nineteen years old at the time of the offense. At the time of sentencing he was single and lived with his mother, for whom he provided some assistance and support. He did not graduate from high school but had obtained his GED. His employment record was good. He had no criminal record as an adult and no significant juvenile record. He reported that he began using alcohol at about the age of

twelve and had also used marijuana, cocaine, and LSD. At the sentencing hearing he testified that it had been over 2½ years since he had used any illegal drugs. He stated that he had no intentions of killing the victim and did not know that his codefendant was going to do so. He stated that because of this incident he had changed his life and had become a very religious person who was active in his church. He had support from members of his church.

In assessing the Defendant's sentence, the trial judge expressed his concern over the nature and circumstances of the offense -- specifically, that this killing was related to a drug transaction. It is clear from the record that the reason the defendants approached the victim was because they thought the victim had sold them poor quality or counterfeit LSD. The court also noted that a death was involved and that a firearm was used to commit the crime. The judge also stated that he did not believe the Defendant showed true remorse for what he had done. We again point out that the gun used to commit the killing initially belonged to the Defendant, although he testified that the "trigger-man" was buying it from him and had actually possessed it for two or three weeks.

Trial judges are traditionally vested with broad discretionary powers in sentencing matters. As we have stated, the Defendant has the burden of establishing suitability for full probation, even though he is entitled to the statutory presumption of alternative sentencing. Appellate courts should not place trial judges in a judicial straight-jacket on sentencing matters, and we should be reluctant to interfere with their traditional discretionary powers. Moten v. State, 559 S.W. 770, 773 (Tenn. 1977). The trial court is in a much better position to assess a defendant's credibility, feelings of remorse, and potential for

rehabilitation than an appellate court can determine from the record.  From this record, we cannot conclude that the trial judge erred or abused his discretion in ordering the Defendant to serve a portion of his sentence in confinement.  The judgment of the trial court is affirmed.


_____
DAVID H. WELLES, JUDGE


CONCUR:


_____
PAUL G. SUMMERS, JUDGE


_____
JOE. G. RILEY, JUDGE